**EXHIBIT 1**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MUKTAR ABSHIR ADEN a/k/a "Mo" | No.  2:24-mj-00310-KFW |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Elliot Arsenault, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent ("SA") with Homeland Security Investigations ("HSI") and have been since March 2022. I am currently assigned to HSI's Portland, Maine office. I have participated in numerous criminal investigations, to include matters involving investigations relating to the trafficking of narcotics. Through my training and experience, I have become familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in drug trafficking.

2.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested arrest warrant.

### SHOWING OF PROBABLE CAUSE

3.  I know from my participation in this investigation that since about the February 2024, HSI has been investigating the distribution of fentanyl, methamphetamine, and other illegal drugs in Androscoggin County and the

surrounding area. In recent months, I have focused on the distribution activities of defendant MUKTAR ABSHIR ADEN, a/k/a "Mo."

4. On about October 3, 2024, HSI arranged for an undercover agent (the "UC") to purchase approximately 224 grams of methamphetamine from ADEN in exchange for $1800. The UC received ADEN's telephone number from a confidential informant. Prior to the controlled buy on October 3, the UC and ADEN had agreed to terms, and then arranged to meet in the parking lot of a Target store in Topsham to conduct the transaction. I have memorialized and reviewed the electronic messages exchanged between the UC and ADEN in advance of the controlled buy.

5. On the afternoon of October 3, Maine Drug Enforcement Agency ("MDEA") agents, working in concert with HSI, began surveilling ADEN's residence, 210 Blake Street, Apartment #2, in Lewiston (the "ADEN Residence"). Agents observed ADEN depart his residence at the appointed time driving a silver Chevrolet Trax bearing Maine registration 948JVD (the "Subject Vehicle"). I later confirmed by reviewing Maine BMV records that the Subject Vehicle is registered to ADEN. MDEA agents continued to surveil the Subject Vehicle as it entered and parked in the Target parking lot.

6. ADEN and the UC then spoke on the phone; the UC's side of the phone call was recorded by virtue of an audio recording device the UC wore on his person to capture the buy. ADEN requested that the UC walk to his location in the parking lot, which the UC did. All the while, MDEA and HSI agents continued to surveil the UC and ADEN.

7. HSI and MDEA agents observed the UC enter the Subject Vehicle. The UC and ADEN conducted a brief conversation captured by the audio recording device. In

substance, ADEN introduced himself to the UC as "Mo," and complained that the UC had asked to meet at Target; ADEN demanded extra payment of $200 for having made the trip. ADEN then further instructed the UC that their next buy would occur at the ADEN Residence, at which time ADEN would front the UC an additional 8 ounces (224 grams) of methamphetamine, if the UC also bought 8 ounces at that time (i.e., a total of 16 ounces of methamphetamine for $1800 up front, with the balance to be paid after the UC had sold the additional 8 ounces). The UC agreed. During this discussion, ADEN provided the UC with the previously-negotiated 224 grams of methamphetamine in exchange for $1800 (with an additional $200 due upon their next meeting).

8. Also during the transaction, the UC observed and overheard ADEN receive a phone call from an unknown third party; both sides of the conversation was captured on the UC's audio recording device because ADEN took the call on speaker phone. The UC overheard the third party request to purchase "two bags and a sticky" from ADEN. I understand, based on my training and experience, and my involvement with this investigation that a "bag" indicates an ounce of controlled substances and that a "sticky" indicates 10 grams of hard-packed controlled substances.

9. Following the transaction, the UC exited the Subject Vehicle and ADEN departed the parking lot. MDEA agents surveilled the Subject Vehicle return to the vicinity of the ADEN Residence. Subsequently, I met with the UC and recovered the controlled substances that the UC had purchased from ADEN. The controlled substances were subsequently analyzed and field tested; they tested presumptively positive for methamphetamine, and weighed approximately 225.8 grams, inclusive of packaging.

## CONCLUSION

10. I respectfully submit, based on the facts set forth above, that probable cause exists to charge MUKTAR ABSHIR ADEN a/k/a "Mo," the defendant, by Criminal Complaint with the offense of distribution and possession with intent to distribute controlled substances, including a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Section 841(a)(1), and I request that the accompanying Criminal Complaint be issued.

Elliot W. Arsenault
Special Agent
Homeland Security Investigations

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Oct 08 2024

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title